Good morning. May it please the Court, my name is David Henrity and I'm here on behalf of the plaintiffs. And I was going to start by talking about three points. One is that it doesn't matter what Oregon law says or how it characterizes the effect of the referendum, these plaintiffs have a right to seek remedy for their constitutional violations in state, in federal court. Second, that the at this stage in the proceedings, the plaintiff's burden is relatively or relatively modest and that they can, as long as they show that the practical consequence of the relief that they're seeking will likely increase the chances that their injuries will be redressed, is all that they need to show at this stage in the proceedings. And third, I was going to talk about how Measure 88 is the type of, is a legislative action that is subject to constitutional review or to review by federal court. The district court determined that plaintiffs lack constitutional standing because on the third prong of the inquiry, there's no, can't show addressability that the relief, that the district court could grant any relief that would redress the harm. Where did the district court go wrong in its analysis? As far as the redressability or the fairly traceable to the injuries in this case? Well, we feel that the federal court misapplied Oregon law, but we feel that Oregon law doesn't matter because how federal courts look at, sorry. So your claim is that the voters in passing the referendum or voting no on the referendum denied your clients of equal protection of the law? Correct. Correct? Correct. Okay. And let's just assume for a minute you prevail on that. Let's just, I'm not suggesting you would or anything, but let's just assume. What is it that the district court can do to redress that harm? What we're saying, Your Honor, is what federal courts have the power to review legislative action that's motivated by class-based and racial animus. And when they've But what's the ultimate legislative action? It's a failure to enact the bill, right? And, Your Honor, what we're referring to, yes. And so we're saying that enacted So wait a minute. Are you saying if a state fails to enact the bill, that's sufficient to give rise to some kind of protectable legal protection interest? Well, we're saying like the Crawford footnote, where this is more than just a, we're saying this is a repeal where there's evidence of discriminatory intent. And we're saying this is an enactment. State law seems to say it's not a repeal, right? In the 28-J letter, they cite a case from the Oregon Supreme Court saying it never became law. Right. Your Honor, and what we're saying is, we disagree with that, but With the Oregon Supreme Court? With that characterization that this driver card law never became a law. What we're saying is it's a duly enacted statute that it passed both House and legislature and was signed by the Governor and would have become effective, but for Measure 88. Right. So therefore, if it's not effective, is it a law, enacted law? Your Honor, we're, yeah, we believe under Oregon law it's an enacted law. But at the same time, Oregon law What's the best authority for that? I'm sorry, Your Honor. What's the best authority for that if you don't have an effective date and it's not a statute in force, it still is an effective law? Is that your argument? We're saying that it doesn't matter that it became effective or not, that it was still enacted under the Oregon Constitution. There's no question that it passed the legislature and signed by the Governor and would have become effective, but for Measure 88. And we're saying that Measure 88 is an enacted referendum, meaning that it's just like any other type of legislative action, whether, you know, it's a voter initiative or a subsequent legislature, this Measure 88 has the substantive result, which is what Justice O'Connor was referring to in Cuyahoga Falls versus Buckeye Community Hope Foundation, where in that case Could the legislature have changed its mind before it became effective and repealed it? Yes, Your Honor, exactly. And that's our point, is the fact that Measure 88 Because it wasn't yet a law. Well, what we're saying is that the driver card law is a duly enacted law that would have become effective at the time that Measure 88 was filed. At the time that the referendum was filed, there was nothing, no requirement under Oregon law that it would need voter approval. It was only when Measure 88 was filed that the enacted statute, that the driver card law was suspended. But that's all allowed for under the Oregon Constitution, correct? What was the first part of that, Your Honor? That's all allowed for under the Oregon Constitution. Absolutely, Your Honor. So it's a process. Well, that's assuming that the referendum is valid, and that ignores the fact that the driver card law existed in the first place and was enacted. Well, you don't challenge the referendum process. We do not. Everything, everything, sort of the process was proper here. It is the legislature passed the bill, it was signed by the governor, but then the two, whoever they were, the two legislators initiated the process for a referendum, kicked that and referred it to the voters as part of the legislative process. Correct. And we're saying that's a subsequent and independent legislative process under Oregon law, that the driver card law. So my question, though, earlier was, let's assume that you can, let's just assume that you prevail in front of the district court on your equal protection claim. What do you want the district court to do? Your Honor, we think that the Federal courts have the power to review legislative actions that violate the Constitution, and they have power to remedy those constitutional violations. What do you want them to do? And so what would you tell, district court, here's what we want you to do. We want you to order the, we want you to order the Department of Motor Vehicles to implement the underlying bill, issue driver cards. Is that what you want? Yes. I mean, we believe that, what we're asking the court to do is the declaration that the Measure 88 is void and unenforceable, and that the State officials cannot give effect to the enacted referendum, that they cannot give effect to this unlawful legislative action, and to enjoin them from denying. Just a minute now. But that was the, that's sort of the end product of the legislative process. In the legislature, it ended with the bill, but then the referendum came along. So if you, if you prohibit that referendum result from going into effect, then the underlying bill itself can't go into effect either, right? No, Your Honor, what we're saying is that referendum is an unlawful legislative action independent from the driver card law being enacted in the first place. And we're saying even under Oregon law... Wait a minute. How is it independently illegal, the referendum? Because, and so going back to Cuyahoga Falls, where just as Cuyahoga Falls versus Buckeye Community Health Foundation, in that case, there was a referendum. But that referendum, it purportedly invalidated an earlier enacted law. But the state court in that case found that referendum unlawful. And that earlier... Those were two completely, you know, independent acts, right? In other words, the law was passed at one time, went into effect, and then later, this referendum, in effect, tried to repeal that law. No, Your Honor... Is that what happened there? No, in Cuyahoga Falls and in the SDDS versus South Dakota, in both of those cases, the referendum was filed before the earlier enacted law took effect, which is the exact same situation here. And these plaintiffs are asking for the same type of relief that the court provided in SDDS versus Inc., I mean, SDDS Inc. versus South Dakota, where that... And what I was getting to with Justice O'Connor in Cuyahoga Falls is she makes clear that in that case, in Cuyahoga Falls, there is no enacted statute, that because that, our enacted referendum, because that referendum never took effect, there was no substantive result. But she made clear at least two times that if a referendum that rejects an earlier enacted law is then found invalid, then that substantive result of that enacted referendum can be challenged if there's evidence of discriminatory intent or if it's arbitrary and capricious. And that's precisely what we're challenging here, is that this enacted referendum, Measure 88, is legislative action, just like any other type of legislative action that repealed an earlier law. And this legislative action has its legislative record, has evidence of discriminatory intent. And what we're asking the Court to do is enjoin these State officials from giving effect to that... I misunderstood how this process works under the Oregon Constitution, because you keep using the term repealed, where I understood it to be just a normal, regular process. And at the end, when the voters voted no on Measure 88, that was it. The legislative process resulted in no bill. And what we're saying is that when courts, Federal courts... What you're saying is that, as I understand it, is that when Measure 88, you can look at Measure 88 as a separate, distinct piece of legislation... That's correct, Your Honor. ...which was in effect a repeal of the underlying bill and challenge that. And if you prevail in your challenge to Measure 88, then you can enjoin the State or order the State officials to just go ahead and implement the underlying statute. Exactly, Your Honor. We're saying that the practical... That's not my understanding. Well, I'm going to have to go back and take a look at the Oregon Constitution again to see if that is a correct interpretation of the Oregon Constitution. And this 28J letter that was sent to us does not seem to match up with that. And, Your Honor, we disagree. But at the same time, it doesn't matter how Oregon characterizes the effect of its referendum. Federal courts look at the practical operation and effect of that legislative action. And there's no question under Oregon law that the legislative action or Measure 88 is a separate, independent legislative action by the people who are exercising their legislative power through the referendum. Let me go back to the Supreme Court and try to unpack what they did. In the SDS case, they actually held that the referral itself was unconstitutional, correct? Your Honor, that's the Eighth Circuit. Sorry. I'm sorry. The SDS is the Eighth Circuit. Or the S-D-D-S, I guess it is. But here, there's not a suggestion that the referral itself is unconstitutional, correct? That's correct, Your Honor. We're challenging the result of the enact or the enacted referendum itself. Right. You're in charging the other end. So then let's go back to Cuyahoga. But Your Honor, if I may, just in SDS, in that case, that SDS was challenging the substantive result of that referendum because it was a no vote and it prevented that earlier enacted legislation from taking effect. Right. Okay. And that's what we're challenging here. So do you have, so they talk about in the cases that precede Cuyahoga about the affirmative impact of a referendum that gives you, in effect, a new law. And here, it would be an absence of a law, right? You're right. Yes, Your Honor. And we're saying Isn't that different? Again, it's the practical operation in effect. Because what, as Justice Ginsburg was talking about in the Arizona legislature versus the Arizona Redistricting Commission, that the one operates a positive law and the other is a negative, where it's, you know, correcting the sins of omission versus the sins of commission. And so there isn't a, if an initiative passes, if voters vote yes, there's a change because there's a new law. In a referendum, if voters vote no, there's a change because it's a rejection of an earlier enacted law. And so what we're saying here is the period of time that we're asking the federal court to look at is the period after the driver card law was enacted, signed by the governor, and would have taken effect up until the time that Measure 88 was filed. And again, that referendum is a subsequent independent legislative action. So what we're saying is once Measure 88 is invalidated, then the, it would reset back to the time when driver card law was the status quo. And so we're saying... I mean, it seems like the cases don't talk about regressibility, which seems to be our concern here. Do you have any of these cases that really affirmatively address regressibility? As DDS versus South Dakota, because in that case, the federal court did give the plaintiffs the relief they were seeking with the, by invalidating that referendum. We believe in cases like Missouri versus Jenkins, or recently in the Arce versus Douglas case, the Gonzales versus Douglas, the district court in Arizona enjoined state officials from giving effect to unlawful legislation that discriminated against Mexican-Americans. Could you have brought this in state court under the Republican guarantee clause? I don't, no, Your Honor, I don't believe so. Besides, this is, these are, our clients are being denied federal rights. And sorry, ma'am. That's not the answer to whether you could have brought it in state court, though. But we're asking for the federal, and that's why we're asking this federal court to order that the state officials be enjoined from giving effect to this unlawful legislative act. Your Honor, I ran out of time. I don't know if I have any time for everybody. We'll see where we go, all right? Okay. Thank you. May it please the Court, John Amakinen, representing Governor Brown and the other state defendants. The key issue in this case is whether the federal court can provide any effective redress to plaintiffs. In particular, was there anything that the district court could do based on the plaintiffs' allegations that would have resulted in plaintiffs being able to obtain driver cards? The district court correctly concluded that even if it could invalidate the outcome on the vote of Measure 88, that would not resurrect the driver card bill, House Bill 833, and the court could not order Oregon to enact a law that was not validly passed or constitutionally required. So there was no relief available to remedy plaintiffs' alleged injuries. To take a step back, under the Oregon Constitution, any legislation proposed by the Oregon legislature must go through three steps, and I don't want to be too much about this is how a bill becomes a law, but just to be clear on how the Oregon Constitution works. First, it has to pass both houses of the legislature. Then it's presented to the governor. She can either sign it, veto it, or do nothing. If she does nothing, that's the same as signing it. Next, it moves on to the voters. The voters can either do nothing or petition for a referendum. Again, if they do nothing, that's as if they approved a referendum, just like when it sits on the governor's desk. However, if there is a referendum called, then there's only two possible results, either an up vote or a down vote. In this case, that third step never happened. It never got to an affirmative vote, a passed vote by the Oregon voters to enact the law. Because of that, what plaintiffs are asking for is not possible. We cannot go back and have House Bill 833 suddenly become Oregon law. Could you end up with a result where there's no law? Yes, and that's what happens in cases where, you know, plaintiffs challenge, say, an affirmative initiative that creates a new law, and that new law is unconstitutional. There, the court can provide relief because it would take it back to the status quo where there is no law. Here, that's not what plaintiffs are after. If that was to happen here, if we were to go back to the status quo, the status quo is no Oregon driver law, driver card law. There never has been. And so that is why there is no relief in this case, because going back to the status quo is not, is precisely the opposite of what plaintiffs want. So your point is that you can't go back and end up with the Oregon law on driver identification cards as opposed to driver's licenses. Correct. Not in, correct. And particularly not based on House Bill 833. That's not to say that there couldn't be an initiative processed. I mean, it's not to say that there can't in Oregon be a driver card law, but it has not been validly enacted yet. So if the court were to determine that it couldn't order what they hoped for, and that is to maintain the integrity of the legislature's law, but it would just wipe the law off the books, I mean, it would basically, I mean, invalidate the initiative, the legislature could go back and reenact the law, correct? I think they would have to start over because a referendum was validly called, but yes. Right. They would have to start over. And then the next referendum might have a different result. Correct. Okay. Correct. So there would be, there could be some relief here, correct? Well, I think it's too speculative. I mean, if, I can't imagine what that relief would be that would actually get to the ultimate question of driver cards. I mean, if it, if this court were to say to the Oregon legislature, consider this issue again, I mean, I don't know that that's any different than where we're at, you know, at this moment. Well, but if the, if it's determined that the referendum that is at issue is animated by racial and other reasons, and that initiative or that referendum were declared unconstitutional, then we'd all be kind of at ground zero, right? Well, I don't think we'd quite be at ground zero because there's been no challenge to the actual referral process. And so that's why I said once a valid referral has been called, and I'm talking about the process of actually referring it to the voters, not the vote, but because there's no challenge to that process, once it's been validly referred to the voters, the only options are either pass or reject. There isn't a sort of, you know, there had been a procedural problem with the referral. Like, you have 90 days to file the referral petition. If it was filed on the 92nd day, and somehow that got past people and it still got referred to the Oregon voters, and the Oregon voters voted, I think this would be a much closer case if it was a procedural question and a problem of where you could say there was never actually a valid referral, because that would be more of a thing. What about Cuyahoga, then? Where does that fit in? Cuyahoga did not involve any question of redressability. So, I mean, I think that's sort of the end of the answer, that nobody raised this issue. It was, you know, the defendants prevailed on a different basis, a failure to state a claim in that case, or 11th Amendment, I can't remember which basis, but they failed on another claim, and nobody addressed standing and redressability in that case. Well, you seem to agree, we'll call this a referendum, but the referendum is subject to constitutional challenge. Well, we don't disagree. Although you seem to maybe try to limit that to procedural challenges. But still, it's subject to challenge. Our position is not that a referendum is never subject to challenge. That is certainly not our position. But this case is about standing, so it's really about whether there's any redress. So it goes to redressability. So, the plaintiffs can challenge, I mean, hypothetically, the referendum on 14th Amendment grounds. And if that challenge is successful, then what happens? The entire, not only what was referred and the vote on the referendum, but the under lying statute that was enacted by the legislature, they both get undercut. So there's nothing there, right? Is that right? So we would go back to the status quo, which in this case is no law. Right. So, in some ways, isn't that a redress to the plaintiffs because no law is better than this law? No law is exactly where we're at still. I think there's no difference whether it was a law that was... No, no, no. It's better than the law that would be in effect if the referendum were passed. The only law that's in effect is the, well, the Oregon driver license law, which is not at issue here. There is no law in effect. It would allow... It just wipes out the identity card in effect. Correct, which is not in Oregon law at the moment. So driver cards have never been a part of, our position is driver cards have never been available in Oregon, which would be the result whether this referendum was valid or invalid. We reach the same place and that is why it's not redressable. So there's no redress. There's no other conceivable basis. Not that I've been able to think up. And I will say in the SDDS case, I think that's the closest to this case factually, although that case, of course, is from the Eighth Circuit. It did not directly address standing. Everybody seemed to assume that there was some relief that could be ordered. However, the Eighth Circuit simply said, you know, there should be a summary judgment in favor of the plaintiffs in that case without saying what practical impact that would possibly have. So I think, you know, factually that's the closest case, but it really doesn't, you know, get to the heart of this. Could the Federal court just order the DMV to issue driver cards? I think if there was a, I think the only time the Federal court could issue such an order if there is an ongoing constitutional violation, which we don't have here, and that would be in the cases where, you know, Federal courts have ordered things like taxation and busing to deal with segregation and desegregation. But here there's no allegation that Oregon's scheme for driver's license as it stands at the moment is unconstitutional, which I think is what you would need in order to require the DMV to issue driver cards. You think it's a possible ground for equitable relief by the district court, should it come to this, to say, declare the referendum invalid because it's unconstitutional, so then fall back to the statute and say, therefore, the statute, you know, I'm going to deem the statute to become effective without a referendum, so the state should enforce the statute. And that I don't think is possible, because it never passed, because once the referendum Well, it passed the legislature, right? It did, it did, but there's these three steps to abolish I know that, so the court says, you know, I declare the referendum invalid, so I'm going to throw out the referendum completely, so we're going to back up to where the statute passed and there's no referendum. And I don't think that the court Why can't the court do that? I don't think the court can throw out the referendum process in its entirety because there's been no challenge to the actual referral. So that was another difference in SDDS. The court actually found that there was discrimination, that's a dormant commerce clause, but that there was discrimination in the actual referral of the measure to the voters, discrimination on the part of the state in that case. Here there's been no allegation and no suggestion that there was any discrimination in referring the case to the voters, because that's not at issue. I think the most the court can do is undo the actual vote on the measure, which doesn't get back to somehow House Bill 833 springing into law. I mean, we'd have somewhat of a federalism problem. Yes. You're basically saying that Could it order another vote on the referendum then? I don't Answers maybe, huh? I guess I don't know. I don't know. I mean, that would seem — I don't think that's what plaintiffs want. Well, You know, because in that sense, in that sense, they could just bring a new initiative to make — I mean, in Oregon, the voters can — you know, it's not limited to constitutional amendments. They could bring an initiative asking for a law, you know, enacting the same exact law on driver cards. They could do that at this point. So I guess that would sort of, to me, be the same, and I guess I wouldn't see the district court wanting to weigh in when there really is, you know, another avenue to get to that same result, because that, you know, a re-vote would seem almost like a new vote on a new law. Well, because this referendum is on the earlier — almost law, correct? Correct. Correct. Yes. There's never been driver cards in Oregon. You know, that was what the House bill was for. And has there been a challenge to the federal law, not as — in terms of the — To the real I.D. law? Yes, to the real I.D. law on this particular section? Not that I'm aware of. I know that the real I.D. law has not been — has not been found unconstitutional, and I believe it's in the briefing that maybe 12 states offer driver cards, so it's not like Oregon is some outlier by not offering driver cards at this point in time. All right, thank you. Unless the Court has further questions, thank you. We have a minute for rebuttal. Thank you, Your Honor. I appreciate that. We just — my point is that this — the defendants are conflating these two independent and separate legislative processes, that what we're saying is that the driver card law was enacted and could have survived on its own without any referral or referendum. It didn't need that third step. The driver card law would have become effective on January of 2014. There's no question about that. No, but here's one of the — there's like her first step, the law is enacted, and then there's this last step, which the referendum didn't turn out too well, in your view. But the actual fact of referral was never challenged. And, I mean, I've seen situations where a referendum initiative are challenged on a procedural basis, but here it wasn't challenged. And so then it was sort of, well, take your chances at that point, right? Your Honor, well, under State law, we can't challenge a referendum boitano. We can't challenge a referendum until there's a substantive result, the validity of the referendum. And even under Federal law, I think we would need to wait until there's a right — until the case is right, because if voters would have voted yes, there would have been no substantive result that could be challenged. And so what we're saying is even if, in this case, there is a State law — well, we're saying the State law doesn't require reenactment if Measure 88 is invalidated. And even if there was a requirement, which there isn't, the Federal court has the power to enjoin State laws that hinder the enforcement of the Federal Constitution. Let me just ask one last question. What you're asking, though, is that this State Bill 833 go into effect. Is that what you're asking? That's correct, Your Honor. Thank you. Just a minute. I'll ask one more question. Does State law permit a challenge to the referral process itself before there's a vote on the referendum? Not — no — well, to the referral process, yes. If there's a — to the process. But again, we're not challenging the process. We're challenging the substantive result. All right. Okay. Thank you. All right. Thank you. Thank both of you for the argument and the very helpful briefing. Ms. versus Kate Brown is submitted.
judges: Tashima, McKeown, Paez